(100 App. Div. 136) ·

## O'LEARY v. BUFFALO UNION FURNACE CO.

(Supreme Court, Appellate Division, Fourth Department.    January 4, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—ISSUES—INSTRUCTIONS.

Plaintiff alleged that his injuries were due to defendant's negligence in not working a certain blast furnace in a reasonably safe manner, and thereby causing unusual quantities of molten iron, flame, etc., to be thrown therefrom, and in not having the furnace sufficiently equipped with reasonably safe and suitable appliances at the time of the accident. *Held*, that such allegations related only to the mode of operating the furnace itself, as distinguished from an alleged failure to exercise reasonable care in matters connected with the operation proper of the furnace, such as the promulgation of rules; and hence it was error, over defendant's objection, to submit to the jury the question of defendant's negligence, if any, in the latter particular.

2. SAME—WITNESSES—CONTRADICTION—INSTRUCTION.

In an action for injuries to a servant, a requested instruction that if the jury believed the testimony given by plaintiff in a former action by a fellow servant, injured in the same accident, against defendant, that plaintiff had seen flames, sparks, etc., issuing from the explosion doors of defendant's blast furnace a good many times, then they must ignore his testimony in the cause on trial that he had never seen the flames and sparks issue from such doors, was improperly refused.

Appeal from Trial Term, Erie County.

Action by Patrick O'Leary against the Buffalo Union Furnace Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Hubert C. Minard, for appellant.
George H. Kennedy, for respondent.

HISCOCK, J.    While plaintiff was at work for the defendant, some distance from one of its furnaces, an explosion occurred therein which threw out cinders and burning matter.    Some of this struck and burned the plaintiff, and he brought this action to recover damages therefor. He obtained a verdict upon his claim, the propriety of which is challenged by the appellant because of various errors alleged to have been committed by the trial judge.    We think that the contention of the defendant is well founded in some respects, and that the judgment must be reversed and a new trial had.

Plaintiff was the owner and operator of three furnaces, of which one only is involved.    This one was about 60 feet high, and about 13 feet in diameter on the inside.    In a general way, the ore and limestone to be melted and the charcoal were fed into the furnace at its top, and the fire and heat by which the raw material was melted and fused was located at the bottom.    For the purpose of increasing the heat, a hot-air blast was fed into the furnace at the lower part.    At or near the top were explosion doors and other appliances, which it is unnecessary to describe in detail, for the purpose of allowing gases and other material to escape and be thrown out when circumstances required.    Very frequently the ore and fuel would not move downward through the

furnace to the point of melting and fusion with perfect regularity and continuity of movement, but would cling to the sides of the furnace. In the great majority of cases this hanging would be for only a very brief period, and would produce no trouble of any consequence. Sometimes, however, the hanging would continue for a longer period, and there would result some considerable space between the molten and the raw material. The result of this would be that when the hanging material did slip down it would, either by the temporary extinguishing of the consumption of gas constantly formed, or by reason of the contact of the cold with the molten material, produce an explosion which would be severe enough to throw cinders and burning material through the explosion doors for some distance into the yard. Sometimes, when one of these more serious hangings took place, the man in charge of the furnace would signal for the withdrawal of the hot-air blast, which would reduce the pressure below the unfused material and make easier the "slip." It was one of these explosions which caused the expulsion of burning material which caused the injuries to plaintiff.

Upon the trial his efforts were principally devoted to charging the defendant with negligence: First, because it had not adopted some method of giving warning to employés who were liable to be burned when one of these explosions occurred; and, second, because it had not explained to him that this danger existed in connection with the work which he was doing. In addition to denying any negligence upon its part, defendant very strenuously urged that plaintiff had so long been at work around the furnaces that he was to be charged with knowledge that these explosions were liable to occur, and of all of the risks which were inherent to the business in which he was engaged by reason thereof. He sought to escape any such responsibility by denying all knowledge, information, and notice acquired during the many months of employment by the defendant by which he might be charged with such responsibility.

The evidence upon these issues was sufficiently close, and their solution by the jury in plaintiff's favor sufficiently subject to doubt, so that defendant was clearly entitled to have the case submitted free from any improper burdens upon it, and guarded against any unjustifiable inferences or conclusions by the jury. We think that the learned trial judge did not satisfy these requirements, and failed to enunciate certain rules for the guidance of the jury in such a clear and certain form as was due to the defendant. Amongst other things, the plaintiff in his complaint charged that his injuries were "due to the negligence of this defendant in not working said furnace in a reasonably safe and proper manner, and thereby causing great and unusual quantities of charcoal, molten iron, flame, and other highly heated substances to be thrown therefrom; in not having said furnace properly and sufficiently equipped with reasonably safe and suitable appliances at the time of said accident." These allegations, especially when interpreted in the light of the other charges contained in the complaint, relate to the mode of operation of the furnace itself, as distinguished from an alleged failure to exercise reasonable care in matters connected with the operation proper of the furnace, such as the promulgation of rules. In charging the jury, the trial judge stated:

"The plaintiff claims that his injury was received * * * by reason of the negligence on the part of the defendant in operating the furnace near where he was working."

And again:

"It is further claimed on the part of the defendant that there is no way of ascertaining exactly when these slips are to take place, and there is no way of preventing a furnace of this character from hanging at certain times, and that this furnace was operated during that day as a furnace should be operated; that is, it was operated properly, so far as any human being could operate the same."

At the close of the charge defendant's counsel stated:

"Your honor stated that the plaintiff claimed that the injury was due to the negligence of the defendant in operating the furnace. I desire to except to the submission to the jury the question of the negligence of the defendant in the operation of the furnace."

Nothing was said by the trial judge in response to this exception. We think that, in the light of plaintiff's complaint, these statements upon the part of the court in its charge might be very readily understood by the jury as submitting to them the question whether the defendant did not improperly and negligently operate this furnace, aside from any alleged negligence in connection with the promulgation of rules, or other matters merely incidental to the immediate and mechanical operation of the furnace. This might be the more readily understood by the jury from the fact that, when defendant's counsel took exceptions based upon this theory, the trial judge said nothing to rebut or correct this understanding. We think that there was no sufficient evidence upon which the jury could say that the defendant was thus negligent in constructing and feeding its furnace, or that it unreasonably failed to take any precautions against, or suffered to exist and continue, dangers and risks, in that respect not reasonably incidental to the business in hand.

It appears that another case springing out of this same explosion had been tried against the defendant, and that plaintiff had been sworn as a witness therein. The stenographer who took the evidence upon that trial swore that, amongst other things, the present plaintiff upon that trial, in response to the question, "And you have seen the flame, sparks, and stuff come out of those doors a good many times, haven't you?" answered "Yes"; and that he gave other evidence upon the subject of his knowledge of the occurrences of these explosions, some in favor of, and some against, the present defendant. Upon the present trial the plaintiff, in view of the exigencies of his case, felt compelled to deny absolutely and broadly any knowledge of explosions and emissions of cinders and heated material such as caused his accident, thereby disputing the inferences to be drawn from other evidence given in behalf of the defendant. Under these circumstances, defendant's counsel asked the court to charge:

"If the jury believe the testimony given by O'Leary in the Bannon Case, that he had seen the flames and sparks and stuff come from out of these doors (referring to the explosion doors) a good many times, then that they must ignore his testimony in this case that he had never seen the flames and sparks come from out the explosion doors."

This the court refused to do, and we are unable to see why such refusal was not error. It will be noted that the request was not to the effect that if O'Leary upon the prior trial testified to such knowledge the jury should disregard his evidence to the contrary upon the present trial, and which request might have been properly refused, for it would then rest with the jury to determine whether O'Leary testified truly upon the former trial or upon the present trial; but the request to disregard O'Leary's testimony upon the present trial is based upon the assumption that upon the former trial he testified truly to what he knew, and, if the jury should believe to be true the testimony given by him upon the first trial that he had seen these emissions and explosions, we fail to see how it could then believe his present testimony that he never had seen them. In other words, if he told the truth when he stated that he had knowledge, manifestly he could not be telling the truth when he denied such knowledge.

Various other exceptions are urged in behalf of the defendant, which we do not deem it necessary to consider. As stated, we feel that, in view of the doubts cast upon the credibility of essential testimony given in behalf of plaintiff, the defendant was entitled to have a very plain definition of its rights upon the submission to the jury, and that, in the respects already referred to, it was deprived of these rights to such an extent as to entitle it to a new trial.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur; McLENNAN, P. J., in result.